**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and
Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

January 23, 2018

The Honorable Jack B. Weinstein
Senior United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States v. Cerverico Ramirez*, 17 CR 676 (JBW)

Your Honor,

      Before 5:00 a.m. on January 15, 2016, Cerverico Ramirez was walking to the no. 7 train to go to work. As he walked to the train, NYPD officers arrested him. In a case of mistaken identity, he was charged with robbery. Knowing that he was innocent of the charges against him, Mr. Ramirez pleaded not guilty and demanded a trial. Unable to afford bail, Mr. Ramirez was held on Rikers Island while awaiting his day in court. That day finally came in September of 2017, more than 20 months after his arrest.

      On September 27, 2017, the jury acquitted Mr. Ramirez of the robbery and related charges but found him guilty of resisting arrest—Mr. Ramirez had allegedly "flailed his arms and attempted to remove his jacket" to avoid arrest. Though resisting arrest is a misdemeanor and has a maximum penalty of one year in prison[1], the local court held Mr. Ramirez pending sentence until November 20, 2017. Finally, after more than 22 months in detention, the local court sentenced Mr. Ramirez to one year of custody for the resisting arrest conviction. Mr. Ramirez was arrested on the instant charge by federal authorities on November 28, 2017.

      It has now been more than two years since Mr. Ramirez's arrest for crimes which he did not commit. He spent the vast majority of those two years at Rikers Island, a penal island consisting of several separate jails. As reported in the media and evidenced by federal government investigations and the consent decree entered in *Nunez v. City of New York et. al.*, 11-cv-5845 (LTS)(SDNY), the jails of Rikers Island are violent places where correction officers "continue to use brutal force against inmates at an 'alarming rate,' punching them in the head, slamming them into walls and then lying

---

[1]   In New York, defendants sentenced to a year or less are generally entitled to a one-third reduction in time served as a good behavior allowance. *See* NY CORRECTION § 804(1). Thus, on a one year sentence, a defendant can expect to serve eight months.

about it." Michael Schwirtz, *Brutal Force at Rikers Island Continues at an 'Alarming Rate,' Report Says*, N.Y. Times, April 3, 2017, at A19. Because of the failings of New York City criminal courts and a bail system that punishes the poor, defendants who assert their innocence are often held at Rikers Island for years before they can get to trial. *See, e.g.*, Jennifer Gonnerman, *A boy was accused of taking a backpack. The courts took the next three years of his life*, The New Yorker, October 6, 2014 (Describing the odyssey of Kalief Browder, a teenager held on Rikers Island for three years after being arrested for robbery. Eventually, the charges were dismissed and Mr. Browder was released. He committed suicide two years after his release.) As in Mr. Browder's case, Mr. Ramirez refused to plead guilty to a crime he did not commit; as a result he was held in brutal pretrial conditions for 22 months.

Mr. Ramirez pleaded guilty to being found in the United States after deportation, in violation of 8 U.S.C. § 1326(a). He agrees with the guideline calculation found in the presentence investigation report ("PSR") -- a sentencing range of 10 to 16 months. However, the length and nature of Mr. Ramirez's pretrial detention warrant a sentence of time served pursuant to 18 U.S.C. §3553(a) . A sentence of time served is also appropriate pursuant to a downward departure because of Mr. Ramirez's vulnerability to abuse in prison.

**Presentence Investigation Report**

Mr. Ramirez makes the following objections to the PSR:

Mr. Ramirez did not use the alias Aurelio Mashoun when he was arrested on January 15, 2016. He had a piece of paper in his possession with that name and a phone number written on it when he was arrested and the NYPD officer who booked him insisted on using that name.

The information taken from the NYPD arrest report related to the January 15, 2016 arrest is not accurate. Mr. Ramirez did not rob or attempt to rob anyone on that morning. He was simply walking to the train to go to work. He was acquitted, after a jury trial, of charges relating to the alleged robbery, including robbery, assault, and possession of stolen property.

Mr. Ramirez did not sent $3,000 per month home to his family in Guatemala prior to his arrest. He was usually able to send between $1,000 and $1,500 dollars to his family.

**Departure**

Downward departures are appropriate based on the physical and emotional consequences of custody on a particularly vulnerable defendant. The Second Circuit has made clear that vulnerability to victimization in prison may justify a downward departure. See *United States v. Gonzalez*, 945 F.2d 525 (2d Cir. 1991) (a defendant's vulnerability to assault by fellow inmates may justify a downward departure); *United States v. Lara*, 905 F.2d 599, 603 (2d Cir. 1990) (a defendant's "particular vulnerability due to his immature appearance, sexual orientation and fragility . . . . presents an extraordinary situation that warrants considering factors 'ordinarily' irrelevant.").

Although Mr. Ramirez is 26 years old, he appears to be much younger. Counsel has been asked more than once by law enforcement officers whether Mr. Ramirez is old enough to be held in a Bureau of Prisons facility. He stands less than 5 feet tall and is slightly built. His size and

immature appearance render him vulnerable to abuse in prison. Although Mr. Ramirez is presently housed in strict security at the MDC, he will likely be in a less secure facility after sentencing–where his vulnerability will be more acute. This risk of abuse ensures that Mr. Ramirez will suffer incarceration more than the average inmate. He will either live in fear of abuse by other inmates or be housed in a more restrictive setting than necessary to protect him from such threats. Because Mr. Ramirez will very likely be the subject of abuse in prison because of his physical stature and apparent youth, a downward departure is appropriate.

## **18 U.S.C. § 3553(a)**

As the Court knows, under 18 U.S.C. § 3553(a), courts are required to impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. Section 3553(a)(2) states that such purposes are:

1. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense
2. to afford deterrence to criminal conduct:
3. to protect the public from further crimes of the defendant; and
4. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

To arrive at such a sentence, the Court is further directed to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the kinds of sentences available; (3) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (4) policy statements issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution to any victims of the offense  See 18 U.S.C. § 3553(a)(1).

## **The circumstances of the offense and the history of the offender**

Mr. Ramirez is 26 years old. He was born in Guatemala and raised in poverty. His father has always worked as a farm laborer. Mr. Ramirez began working in the fields at age 11 to assist his family financially. Mr. Ramirez's parents and his 8 remaining siblings all live in Guatemala. Mr. Ramirez immigrated to this country in 2007 so that he could provide them financial support.

In 2014, Mr. Ramirez pleaded guilty to attempted robbery in the third degree and was sentenced to 6 months of custody. Notably, he was held in lieu of bail after his arrest on that charge and only pleaded guilty after more than 3 months in custody. This plea resulted in his sentence ending 3 weeks after his guilty plea. Mr. Ramirez was not released at the end of his sentence, he was instead deported to Guatemala.

The financial desperation of Mr. Ramirez's family was the motivation for his return to the United States. Though that motivation remains, Mr. Ramirez now recognizes the futility of coming back to this country. The nearly two years he spent incarcerated on Rikers Island for a crime he didn't commit was enough to deter him from returning to this country. The Court should note the

callous nature of Mr. Ramirez's detention at Rikers Island. The length and difficulty of that detention warrants a sentence of time served here.[2]

**Conclusion**

Because Mr. Ramirez has now been in custody for more than 2 years, only 8 months of which was credited to the sentence imposed by the local court, a sentence of time served is appropriate in this case. Such a sentence is also warranted because of Mr. Ramirez's unique vulnerability to abuse in prison.

Thank you for your attention to this matter.

Respectfully submitted,

/s/

Michael K. Schneider, Esq.
(718) 330-1161

cc:   Clerk of the Court (by ECF)
      Ms. Erin Reid, Assistant U.S. Attorney
      Ms. Angelic Deniz, United States Probation Officer
      Mr. Cerverico Ramirez

---

[2] Of the 22 months Mr. Ramirez spent on Rikers Island, only 8 was credited towards his sentence of one year. The remaining 16 months should be credited towards any sentence imposed by this Court in the instant case pursuant to 18 U.S.C. § 3585(b). Thus, even a sentence within the guideline range will result in the near equivalent of time served. However, experience has shown that it can take the BOP days or weeks to correctly calculate credit for prior custody.